WO                    IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


RENEE A. EKOLA,                              )
                                             )
                    Plaintiff,               )
                                             )
        vs.                                  )
                                             )
CAROLYN W. COLVIN, acting Commissioner )
of Social Security Administration,           )
                                             )          No. 2:13-cv-1812-HRH
                    Defendant.               )
_____)


<u>O R D E R</u>

This is an action for judicial review of the denial of disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  Plaintiff has timely filed her opening brief,[1] to which defendant has responded.[2]  Oral argument was requested but is not deemed necessary.

<u>Procedural Background</u>

Plaintiff is Renee A. Ekola.  Defendant is Carolyn W. Colvin, acting Commissioner of Social Security.

_____

[1]Docket No. 21.

[2]Docket No. 22.

On June 30, 2010, plaintiff filed an application for disability benefits under Title II of the Social Security Act, alleging that she became disabled on March 15, 2008, but plaintiff later amended her alleged onset date to April 5, 2009.  Plaintiff alleged that she was disabled because of depression, corneal dystrophy, fibromyalgia, migraine headaches, insomnia, and anxiety.  Plaintiff's application was denied initially and upon reconsideration.  After a hearing on May 24, 2012, an administrative law judge (ALJ) denied plaintiff's claim.  On July 9, 2013, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's June 22, 2012 decision the final decision of the Commissioner.  On September 4, 2013, plaintiff commenced this action in which she asks the court to find that she is entitled to disability benefits.

## General Background

Plaintiff was born on April 5, 1959.  She was 53 years old at the time of the hearing.  Plaintiff has a G.E.D., has taken some college courses, and has attended vocational school.  Plaintiff's past relevant work includes work as a dental assistant and a lead dental assistant.

## The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2013."[3]

_____

[3]Admin. Rec. at 19.

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since April 5, 2009, the alleged onset date...."[5]

At step two, the ALJ found that plaintiff had "the following severe impairments: fibromyalgia; migraine headaches; irritable bowel syndrome; dysthymic disorder; and

_____

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... her ability to work? If so, proceed to step three.  If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 19.

generalized anxiety disorder...."[6]  The ALJ found plaintiff's anterior basement dystrophy to be non-severe because the majority of treatment for this condition was performed prior to the alleged onset date; and plaintiff "denied worsening or blurred vision, or eye problems" during the relevant period.[7]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[8]  In particular, the ALJ considered Section 5.00 for digestive disorders, Section 11.00 for neurological disorders, and Section 12.00 for mental disorders.[9]  The ALJ considered the "paragraph B" criteria and found that plaintiff had mild restrictions of daily living; mild difficulties in social functioning; moderate difficulties with regard to concentration, persistence, or pace; and had had no episodes of decompensation.[10]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC."  Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that plaintiff retained

_____

[6]Admin. Rec. at 19.

[7]Admin. Rec. at 19-20.

[8]Admin. Rec. at 20.

[9]Admin. Rec. at 20.

[10]Admin. Rec. at 20-21.

the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant should never climb ladders, ropes, or scaffolds. She retains the ability to occasionally climb ramps and stairs, as well as kneel, crouch, and crawl. She can frequently balance and stoop. In addition, the claimant can occasionally engage in bilateral overhead reaching. She should avoid concentrated exposure to extreme cold and hazards. Furthermore, the claimant can understand, remember, and carry out simple instructions and make simple work related decisions.[11]

The ALJ found plaintiff's pain and symptom statements less than credible because plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual and the medical evidence of record is quite minimal."[12] More specifically, the ALJ found that plaintiff's treatment had been routine and conservative.[13] The ALJ also found that plaintiff "refused medication typically prescribed for fibromyalgia without reason...."[14] The ALJ noted that "the limited treatment is, in part, resulting from lack of finances and/or insurance," but still found that "the evidence of record does not support [plaintiff's] allegations."[15] The ALJ further noted that the fact that plaintiff's symptoms were

---

[11]Admin. Rec. at 21.

[12]Admin. Rec. at 22.

[13]Admin. Rec. at 22.

[14]Admin. Rec. at 23.

[15]Admin. Rec. at 22.

relatively well controlled with medication and injections lessened her credibility.[16]  The ALJ

also noted that in April 2010, plaintiff's fibromyalgia was deemed stable.[17]  And, the ALJ

noted that plaintiff had had no actual mental health treatment and rarely took prescribed

medication for her mental impairments.[18]

The ALJ found it "[f]urther damaging to the claimant" that "treating physicians

consistently observed that she appeared healthy and in no acute distress."[19]  The ALJ

explained that such findings were "in sharp contrast" to plaintiff's allegations of pain and

disabling symptoms.[20]

The ALJ also found plaintiff's pain and symptom statements less than credible based

on plaintiff's daily activities.[21]  The ALJ noted that plaintiff "reported being able to prepare

meals, perform household chores, play with her grandchildren, care for her sick-in-laws,

drive a vehicle, use public transportation, shop outside the home, pay bills, attend church

---

[16]Admin. Rec. at 23.

[17]Admin. Rec. at 23.

[18]Admin. Rec. at 24.

[19]Admin. Rec. at 23.

[20]Admin. Rec. at 23.

[21]Admin. Rec. at 23-24.

services, and spend time with friend[s] and family."[22]   The ALJ also emphasized that since

October 2011, plaintiff, with her husband's help, has been caring for three of her grandchil-

dren.[23]   The ALJ expressly found that the mental and physical capabilities necessary to

perform many of the activities of daily living that plaintiff described "replicate those

necessary for obtaining and maintaining employment."[24]

     The ALJ also found that plaintiff had made inconsistent statements.[25]   The ALJ noted

that plaintiff had once reported having 4-5 migraines per week but testified at the hearing

that she only had 2-3 per month.[26]   The ALJ also noted that plaintiff told her treating

physicians that she had no adverse side effects from her medications, but then testified that

her medications make her feel groggy.[27]   And, the ALJ also found it inconsistent that plaintiff

claimed her fibromyalgia was diagnosed in the 1990s but continued to work until 2008

because there was no evidence that plaintiff's fibromyalgia had worsened over time.[28]

---

[22]Admin. Rec. at 23.

[23]Admin. Rec. at 24.

[24]Admin. Rec. at 24.

[25]Admin. Rec. at 24.

[26]Admin. Rec. at 24.

[27]Admin. Rec. at 24.

[28]Admin. Rec. at 24.

The ALJ gave no weight to Dr. Prieve's[29] opinion because at the time he did his consultative exam, he "was not properly licensed" and thus was not an acceptable medical source.[30] The ALJ only gave partial weight to Dr. Peetoom's[31] opinion because he opined that plaintiff would have restrictions with social interaction but there was no evidence in the record to support such a restriction and plaintiff did not report any deficiencies in this area.[32] The ALJ stated that she was giving great weight to the opinions of Dr. Goerss[33] and Dr.

---

[29]John Prieve, D.O., examined plaintiff on September 25, 2010 and opined that plaintiff could stand/walk for 4 hours; sit for 4-6 hours; could lift/carry 20 pounds occasionally and 10 pounds frequently; could occasionally climb, stoop, kneel, crouch and crawl; was unlimited as to reaching; could frequently handle, finger, and feel; and should avoid working around heights.  Admin. Rec. at 341-342.

[30]Admin. Rec. at 25.

[31]On September 25, 2010, Greg Peetoom, Ph.D., evaluated plaintiff and opined that plaintiff "is capable of understanding and remembering most work related instructions and procedures", "is capable of completing at least simple tasks, but she may struggle at times to complete those tasks efficiently," that "[s]ymptoms of depression, anxiety, and pain disorder will likely interfere with her ability to sustain appropriate social interaction", that "[s]he had no difficulty accepting and following instructions[,] but [i]t may be difficult for her, ... to accept perceived criticism from supervisors", that "[s]ymptoms of depression and anxiety, including limitations in attention and concentration, may interfere with her ability to efficiently adapt to changes in routine",  and that "it may be difficult for her to adjust to changes in routine and changes in work complexity[, but i]t does not appear that she is precluded from this , but she may find it difficult at times."  Admin. Rec. at 334-335.

[32]Admin. Rec. at 25.

[33]On October 19, 2010, Jean Goerss, M.D., opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for 5 hours; sit for 6 hours; was unlimited as to pushing and pulling; had limited near and far acuity in her left eye; and should avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, and poor

(continued...)

Tomak[34] but little weight[35] to the opinions of Dr. Quinones[36] and Dr. Pereyra.[37]   The ALJ gave

---

[33](...continued)
ventilation.  Admin. Rec. at 77-79.

[34]On September 28, 2010, Sheri Tomak, Psy.D, opined that plaintiff "is able to carry out simple instructions, follow simple work-like procedures, and make simple-work related decisions. [Claimant] appears to have a fair ability to sustain attention throughout extended periods of time. [Claimant] appears to have a fair ability to perform at a consistent pace and maintain a regular 40 hour work schedule."  Admin. Rec. at 80-81.  Dr. Tomak opined that plaintiff "has the ability to interact appropriately with the general public and co-workers. [Claimant] appears to have an adequate ability to respond to supervisors [and] is able to maintain personal hygiene/standards of dress."  Admin. Rec. at 81.  Dr. Tomak further opined that plaintiff "has a fair ability to respond appropriately to basic work setting changes. [Claimant] appears capable of taking the appropriate precautions in hazardous situations and utilizing transportation.  [Claimant] likely has the ability to organize herself and independently set goals."  Admin. Rec. at 81.

[35]Admin. Rec. at 25.

[36]On February 10, 2011, Robert Quinones, D.O., opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for 6 hours; sit for 6 hours; was unlimited as to push/pull; could occasionally climb ramps/stairs, kneel, crouch, and crawl; could never climb ladders/ropes/scaffolds; could frequently balance and stoop; was limited in reaching overhead; was unlimited as to handling, fingering, and feeling; and should avoid concentrated exposure to extreme cold and hazards.  Admin. Rec. at 95-97.

[37]On January 31, 2011, Rosalia Pereyra, Psy.D., opined that plaintiff "has the ability to remember and understand simple instructions as well as work place procedures. [Claimant] likely has a fair ability to remember more detailed instructions."  Admin. Rec. at 97.  She also opined that plaintiff "is able to carry out simple instructions, follow simple work-like procedures, and make simple-work-related decisions. [Claimant] appears to have a fair ability to sustain attention throughout extended periods of time. [Claimant] appears to have a fair ability to perform at a consistent pace and maintain a regular 40 hour work schedule."  Admin. Rec. at 98.  She opined that plaintiff "has the ability to interact appropriately with the general public and co-workers. The [claimant] appears to have an adequate ability to respond to supervisors [and] is able to maintain personal hygiene/standards of dress."  Admin. Rec. at 98.  Dr. Pereyra further opined that plaintiff "has a fair ability to respond appropriately
(continued...)

great weight[38] to Dr. Liszewski's[39] opinion.  And, the ALJ gave little weight[40] to Dr. Bhalla's[41] opinion.

The ALJ gave little weight to the lay testimony of plaintiff's husband[42] because he was not "trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms[.]"[43]  The ALJ also gave this testimony little weight because plaintiff's husband

---

[37](...continued)
to basic work setting changes.  [Claimant] appears capable of taking the appropriate precautions in hazardous situations and utilizing transportation.  [Claimant] likely has the ability to organize herself and independently set goals."  Admin. Rec. at 99.

[38]Admin. Rec. at 25.

[39]On April 10, 2012, Dr. Liszewski, plaintiff's primary care physician, noted that plaintiff's fibromyalgia was stable, that her general physical health was "stable, no acute medical issues" and that her general emotional health was "stable, affect appropriate." Admin. Rec. at 376 & 379.

[40]Admin. Rec. at 26.

[41]On May 17, 2012, Dr. Ravi Bhalla,  plaintiff's rheumatologist, opined that plaintiff would be limited as to simple grasping with hands, lifting and carrying weights, sitting for prolonged periods, walking, reaching, bending, and kneeling" and that "[l]ooking at the overall picture I do feel that the patient is disabled for all competitive work requirements." Admin. Rec. at 413.

[42]Plaintiff's husband, Bill Ekola, completed two third-party function reports.  Admin. Rec. at 213-220 & 237-244.

[43]Admin. Rec. at 26.

was not a disinterested third party and because his opinion was not consistent with "the preponderance of the opinions and observations by medical doctors in this case."[44]

At step four, the ALJ found that plaintiff was unable to perform any of her past relevant work.[45]

At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [plaintiff] could perform...."[46]  The ALJ, based on the testimony of the vocational expert, found that plaintiff could work as a cashier, usher, or routing clerk.[47]

The ALJ concluded that "[t]he claimant has not been under a disability, as defined in the Social Security Act, from April 5, 2009, through the date of this decision...."[48]

<u>Standard of Review</u>

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...."  The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards."  <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997).  "Substantial evidence is

---

[44]Admin. Rec. at 26.

[45]Admin. Rec. at 26.

[46]Admin. Rec. at 27.

[47]Admin. Rec. at 27.

[48]Admin. Rec. at 28.

'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred in finding her pain and symptom testimony less than credible. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." Garrison v. Colvin, --- F.3d ---, 2014 WL 3397218, at *15 (9th Cir. 2014). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the

severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen v. Chater, 80 F.3d 1275, 1282 (9th Cir. 1996)). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Id. (quoting Smolen, 80 F.3d at 1282). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at *16 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)). "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]" Id. (internal citations omitted). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work

-13-

setting[.]" Id. at 1112-13 (internal citations omitted). "Even where those activities suggest some difficulty [in] functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id. at 1113.

First, the ALJ found plaintiff's pain and symptom statements less than credible because plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual and the medical evidence of record is quite minimal."[49] Although the ALJ noted that "the limited treatment is, in part, resulting from lack of finances and/or insurance," the ALJ still found that "the evidence of record does not support [plaintiff's] allegations."[50] But, it is not proper for an ALJ to discount pain and symptom statements on the basis of lack of treatment when the evidence demonstrates an inability to afford treatment. See Smolen, 80 F.3d at 1284 (Because claimant could not maintain a job, she had no insurance and could not afford treatment. "Thus, the fact that [she] was not taking medication is not a clear and convincing reason for discrediting her symptom testimony."). There was evidence in the record that plaintiff could not afford treatment.[51] Thus, to the

---

[49]Admin. Rec. at 22.

[50]Admin. Rec. at 22.

[51]Admin. Rec. at 44 & 376.

-14-

extent that the ALJ discounted plaintiff's pain and symptom testimony based on a lack of treatment, the ALJ erred.

A second reason given by the ALJ for discounting plaintiff's pain and symptom testimony was that the objective medical evidence did not support plaintiff's statements. But this "is exactly the type" of justification that the Ninth Circuit has "recognized the regulations prohibit." Robbins v. Social Sec. Admin., 466 F.3d 880, 884 (9th Cir. 2006). "'To find the claimant not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in that testimony.'" Id. (quoting Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). Moreover, because Dr. Bhalla found multiple trigger points on each examination,[52] there is objective medical evidence to support plaintiff's statements.

The ALJ also discounted plaintiff's pain and symptom testimony because plaintiff's treatment had been routine and conservative.[53] The ALJ pointed out that "there is no evidence of hospitalizations, pain clinic treatment, physical therapy, surgery or other similar treatment for claimant's alleged pain and fatigue associated with fibromyalgia, irritable bowel

---

[52]Admin. Rec. at 351, 354-355, 397, 399, 402, 405, 408 & 412.

[53]Admin. Rec. at 22.

syndrome, and migraine headaches."[54]  The ALJ stated that "[i]t would seem that someone with a condition as severe as is alleged by the claimant would seek more frequent and aggressive medical care."[55]  "'[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.'" Parra v. Astrue, 481 F.3d 742, 751 (9th Cir.2007) (quoting Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)).  And, while plaintiff's treatment for her headaches and her depression and anxiety may have been conservative, there is nothing in the record that indicates that plaintiff's treatment for her fibromyalgia was conservative.  Rather, the evidence shows that plaintiff was on pain medication[56] and often received injections[57] when she went to see Dr. Bhalla.  Thus, this was not a clear and convincing reason to find plaintiff's statements less than credible.

The ALJ also noted[58] that the medical records indicate that plaintiff was tolerating her medication for her fibromyalgia well without any significant side effects[59] and that plaintiff

---

[54]Admin. Rec. at 23.

[55]Admin. Rec. at 23.

[56]Admin. Rec. at 351, 395, 400, 403, 406 & 409.

[57]Admin. Rec. at 355, 403, 406 & 409.

[58]Admin. Rec. at 23.

[59]Admin. Rec. at 349.

told Dr. Peetoom that she only takes her medication when she was having a bad night.[60] "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." Warre v. Comm'r of Social Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).   However, the fact that plaintiff could tolerate various medications without side effects does not necessarily mean that her fibromyalgia was well controlled by medication.

The ALJ also noted that plaintiff "refused medication typically prescribed for fibromyalgia without reason...."[61]   An unexplained failure to follow a prescribed course of treatment can be a reason to find a claimant's statements less than credible.  Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012).  However, although the ALJ correctly noted that plaintiff refused a trial of Savella in November 2010,[62] the ALJ failed to note that plaintiff then agreed to begin taking Savella in March 2011.[63]  Thus, this was not a clear and convincing reason to find plaintiff's plaintiff's statements less than credible.

---

[60]Admin. Rec. at 328-29.

[61]Admin. Rec. at 23.

[62]Admin. Rec. at 355.

[63]Admin. Rec. at 412.

The ALJ also made reference to Dr. Liszewski's comment in April 2012 that plaintiff's fibromyalgia was stable.[64] But, stability does not mean that plaintiff was symptom free. See Petty v. Astrue, 550 F. Supp. 2d 1089, 1099 (D. Ariz. 2008) ("The Court initially notes that a condition can be stable but disabling").  In addition, the fact that plaintiff may have been "responding to treatment ... does not provide a clear and convincing reason for disregarding" her testimony because "[n]o physician opined that any improvement would allow [her] to return to work." Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).

The ALJ also found plaintiff's credibility damaged by the fact that "treating physicians consistently observed that she appeared healthy and in no acute distress."[65] This observation was made on occasion,[66] but in a medical context "acute" means "having a rapid onset, severe symptoms, and a short course; not chronic"[67] Plaintiff's conditions were chronic, not acute. Thus, the fact that physicians noted that she was not in acute distress is somewhat meaningless.  The observation that plaintiff appeared healthy is similar to an ALJ's observation that a claimant did not appear to be in pain during a hearing, which the Ninth Circuit has found to be an insufficient justification for finding a claimant less than credible.

---

[64]Admin. Rec. at 23.

[65]Admin. Rec. at 23.

[66]Admin. Rec. at 324, 325, 360, 361, & 393.

[67]Taber's Cyclopedic Medical Dictionary A-32 (13 ed. 1977).

Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984).  This was not a clear and convincing reason to find plaintiff's statements less than credible.

The ALJ also discounted plaintiff's pain and symptom statements because plaintiff had made inconsistent statements.  First, the ALJ noted that plaintiff stated in January 2010, that she had 4-5 headaches per week[68] but at the administrative hearing in May 2012, plaintiff testified that she had migraines only 2-3 times per month.[69]  These are not necessarily inconsistent statements as one referred to headaches in general, and one referred to migraines in particular.  Moreover, it is plausible that the frequency of plaintiff's headaches changed over time.  Second, the ALJ noted that plaintiff denied any side effects associated with her fibromyalgia medication when seeing Dr. Bhalla[70] but at the hearing she testified that her medications made her feel groggy.[71]  Given that plaintiff was taking medication besides her fibromyalgia medication,[72] these statements are not necessarily inconsistent.  Third, the ALJ noted that plaintiff claimed she had been diagnosed with fibromyalgia in the 1990s, yet plaintiff continued to work until 2008.  Because the record did not indicate that plaintiff's fibromyalgia had gotten worse over time, the ALJ concluded that plaintiff had a "tendency

---

[68]Admin. Rec. at 189.

[69]Admin. Rec. at 45.

[70]See, e.g., Admin. Rec. at 410.

[71]Admin. Rec. at 55.

[72]Admin. Rec. at 207.

to exaggerate, or misrepresent, integral information."[73]  However, because the record does not contain treatment notes from when plaintiff was first diagnosed with fibromyalgia, the ALJ had little basis for comparing plaintiff's current functioning with her functioning when she was first diagnosed.  This was not a clear and convincing reason to find plaintiff's statements less than credible.

The ALJ also found plaintiff's pain and symptom statements less than credible based on plaintiff's daily activities.[74]  The ALJ noted that plaintiff cared for her grandchildren,[75] who lived with her and her husband, and that plaintiff prepared meals, did household chores, played with her grandchildren, cared for her sick in-laws, drove a vehicle, shopped outside the home, paid bills, attended church, and spent time with friends and family.[76]  The ALJ expressly found that the mental and physical capabilities necessary to perform many of these activities of daily living "replicate those necessary for obtaining and maintaining employment."[77]

Nothing in the record indicates that plaintiff was performing any of these daily activities a substantial amount of time each day, except perhaps for her taking care of the

---

[73]Admin. Rec. at 24.

[74]Admin. Rec. at 23-24.

[75]The children were 2, 4, and 7 years old at the time of the hearing.  Admin. Rec. at 52.

[76]Admin. Rec. at 23-24.

[77]Admin. Rec. at 24.

three grandchildren.  This is the type of daily activity that could translate into the ability to perform work on an ongoing and daily basis.  But, the evidence does not suggest that plaintiff was caring for three small children by herself.  Rather, plaintiff testified that the two oldest children go to school during the day so she is still able to take naps during the day and she testified that her husband and another older granddaughter help take care of the children.[78]  Thus, this was not a clear and convincing reason to find plaintiff's pain and symptom statements less than credible.

In sum, although the ALJ gave numerous reasons for discounting plaintiff's pain and symptom statements, none of these reasons were clear and convincing  Thus, the ALJ erred in finding plaintiff's pain and symptom statements less than credible.

Plaintiff next argues that the ALJ's RFC was not supported by substantial evidence because the ALJ gave great weight to the opinion of Dr. Goerss but little weight to the opinion of Dr. Quinones.[79]  The ALJ gave Dr. Goerss' opinion great weight because she "had the opportunity to review the medical evidence in the record, up to" the point she gave her opinion in October 2010.  But, the ALJ gave little weight to the opinion of Dr. Quinones because he "did not have the opportunity to review the medical record in its entirety[,]"[80]

_____

[78]Admin. Rec. at 52-53.

[79]Admin. Rec. at 25.

[80]Admin. Rec. at 25.

-21-

when he gave his opinion in February 2011.  This explanation makes little sense because the ALJ discounted the latter opinion based on the fact that the doctor had not reviewed a sufficient portion of the medical record but credited the earlier opinion when there necessarily would have been even less medical evidence to review.

More importantly, the ALJ's RFC appears to have been primarily based on Dr. Quinones' opinion, an opinion to which the ALJ gave little weight.  Dr. Quinones opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for 6 hours; sit for 6 hours; was unlimited as to push/pull; could occasionally climb ramps/stairs, kneel, crouch, and crawl; could never climb ladders/ropes/scaffolds; could frequently balance and stoop; was limited in reaching overhead; was unlimited as to handling, fingering, and feeling; and should avoid concentrated exposure to extreme cold, and hazards.[81]  In short, Dr. Quinones found that plaintiff could perform a limited range of light work.

The ALJ found that plaintiff retained

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant should never climb ladders, ropes, or scaffolds.  She retains the ability to occasionally climb ramps and stairs, as well as kneel, crouch, and crawl.  She can frequently balance and stoop.  In addition, the claimant can occasionally engage in bilateral overhead reaching.  She should avoid concentrated exposure to extreme cold and hazards.  Furthermore, the claimant can understand, remember, and carry

---

[81]Admin. Rec. at 95-97.

out simple instructions and make simple work related
decisions.[82]

Except for the last sentence in the ALJ's RFC, the RFC is identical to Dr. Quinones' opinion.
But because the ALJ rejected Dr. Quinones' opinion, plaintiff argues that it necessarily follows
that the ALJ's RFC is unsupported.

It is possible, as defendant suggests, that the ALJ confused the opinions of Dr. Goerss
and Dr. Quinones and that the ALJ intended to give more weight to Dr. Quinones' opinion.
But, the court cannot speculate as to what the ALJ intended to do, but must review what the
ALJ actually did.  Here, the ALJ stated she was giving great weight to Dr. Goerss' opinion.
Dr. Goerss opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry
10 pounds; stand/walk for 5 hours; sit for 6 hours; was unlimited as to pushing and pulling;
had limited near and far acuity in her left eye; and should avoid concentrated exposure to
extreme cold, fumes, odors, dusts, gases, and poor ventilation.[83] The ALJ apparently rejected
Dr. Goerss' opinion that plaintiff was limited to sedentary work,[84] but the ALJ did not explain
why she rejected this portion of Dr. Goerss' opinion.  While an ALJ may reject a portion of a
physician's opinion that is contradicted by other physicians' opinions, the ALJ must give

---

[82]Admin. Rec. at 21.

[83]Admin. Rec. at 77-79.

[84]The vocational expert testified that someone with the limitations as found by Dr.
Goerss would be able to perform only sedentary jobs.  Admin. Rec. at 63.

specific and legitimate reasons for doing so.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). Because the ALJ failed to provide any reason for rejecting a portion of Dr. Goerss' opinion, the ALJ erred.

This error was not harmless.  An error is harmless if it is "inconsequential to the ultimate nondisability determination in the context of the record as a whole." Molina, 674 F.3d at 1122 (internal citation omitted).  If the ALJ had actually given great weight to the entirety of Dr. Goerss' opinion, as the ALJ stated she was doing, then plaintiff would have been disabled under the Medical-Vocational Guidelines.  Under Medical-Vocational Grid Rule 201.14, which applies to sedentary work, plaintiff would be disabled because she is approaching advanced age, she has the equivalent of a  high school education, and her past work was skilled or semi-skilled but the skills are not transferable.

Finally, plaintiff argues that the ALJ erred in rejecting Dr. Bhalla's opinion. Dr. Bhalla opined that plaintiff would be limited as to simple grasping with hands, lifting and carrying weights, sitting for prolonged periods, walking, reaching, bending, and kneeling and that "[l]ooking at the overall picture I do feel that the patient is disabled for all competitive work requirements."[85] "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  But, "if the treating doctor's opinion is contradicted by another

---

[85]Admin. Rec. at 413.

doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).  Dr. Bhalla's opinion was contradicted by the opinion of Dr. Quinones and thus the ALJ was required to give specific and legitimate reasons for rejecting Dr. Bhalla's opinion.

The ALJ gave four specific reasons for rejecting Dr. Bhalla's opinion.  The ALJ rejected Dr. Bhalla's opinion because it addressed an issue reserved to defendant, it was inconsistent with Dr. Bhalla's treatment notes, it was inconsistent with plaintiff's reported activities of daily living, and it was based on plaintiff's subjective complaints.  Plaintiff argues that none of these were legitimate reasons.

Dr. Bhalla's opinion that plaintiff "is disabled for all competitive work requirements"[86] does address an issue that is reserved to defendant, namely whether plaintiff is disabled. However, "[a] treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).  "[R]easons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion." Id.  Thus, the fact that Dr. Bhalla opined about the ultimate issue of disability is not a legitimate reason in and of itself for rejecting his opinion.

---

[86]Admin. Rec. at 413.

The second reason given by the ALJ, that Dr. Bhalla's opinion was not consistent with his treatment notes, was not legitimate because plaintiff's physical examinations consistently revealed positive trigger points[87] and her course of treatment included repeat injection therapy.[88]  Contrary to defendant's contention, it was not inconsistent for Dr. Bhalla to opine that plaintiff would have some limitations in lifting, carrying, walking and standing, when he commonly observed that plaintiff had normal motor strength and a normal gait[89] because a normal gait and normal motor strength do not necessarily mean that plaintiff would not have functional limitations.  Nor was the fact that PA Nelson encouraged plaintiff to increase her physical activity[90] inconsistent with Dr. Bhalla's opinion that plaintiff would be limited in many physical activities.  A recommendation to increase physical activity does not mean that plaintiff's ability to engage in physical activities would be unlimited.

The third reason given by the ALJ, that Dr. Bhalla's opinion was inconsistent with plaintiff's reported activities of daily living, was also not legitimate.  As discussed above, plaintiff's activities of daily living do not suggest that she is capable of working.

Finally, it was not legitimate for the ALJ to reject Dr. Bhalla's opinion because it was

---

[87]Admin. Rec. at 351, 354-355, 397, 399, 402, 405, 408 & 412.

[88]Admin. Rec. at 355, 403, 406 & 409.

[89]Admin. Rec. at 351, 399, 402, 405-406, & 408.

[90]Admin. Rec. at 355.

based on plaintiff's subjective complaints. "A physician's opinion of disability [which is] premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (internal citations omitted). But, because the ALJ erred in finding plaintiff's subjective complaints less than credible, this was not a proper reason for discounting Dr. Bhalla's opinion. In addition, this was not a legitimate reason because Dr. Bhalla did not question plaintiff's credibility and because fibromyalgia is diagnosed primarily based on subjective complaints.[91]

Because the ALJ erred as to plaintiff's credibility, Dr. Bhalla's opinion, and Dr. Goerss' opinion, the court must determine whether to remand this matter for an award of benefits or for further proceedings. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id.

More specifically, the district court should credit evidence that

---

[91]Dr. Bhalla wrote that the "[p]rognosis of [plaintiff's] diseases can be extremely variable, and there are frequent flare ups with changes in the weather and stress. I must rely on the patient's self-evaluation of his/her symptoms as well as the reported effect of their specific work tasks on the symptoms. The patient has been consistent and believable in the patient's reports of the patient's level of pain, fatigue, and limitations on the patient's daily function due to these symptoms." Admin. Rec. at 413.

> was rejected during the administrative process and remand for
> an immediate award of benefits if (1) the ALJ failed to provide
> legally sufficient reasons for rejecting the evidence; (2) there are
> no outstanding issues that must be resolved before a determina-
> tion of disability can be made; and (3) it is clear from the record
> that the ALJ would be required to find the claimant disabled
> were such evidence credited.

Id. However, the court is required "to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." Garrison, 2014 WL 3397218, at *21.

Here, a remand for an award for benefits is appropriate. Plaintiff testified that she needs to lay down for three hours during an 8-hour day due to pain and fatigue,[92] and the vocational expert testified that a person with such a limitation would not be able to perform any work.[93] In addition, if Dr. Bhalla's opinion is credited as true, then plaintiff would be disabled. There is no doubt, if the record is considered as a whole, that plaintiff is disabled.

Conclusion

The decision of the Commissioner is reversed, and this matter is remanded for an award of benefits.

DATED at Anchorage, Alaska, this 9th day of September, 2014.

/s/ H. Russel Holland
United States District Judge

---

[92]Admin. Rec. at 44.

[93]Admin. Rec. at 64.